UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

  Plaintiff,

    v.

MARC EDWIN APPLEWHITE

  Defendant.

**Criminal No. 08-015 (CKK)**
**(Civil Action No. 09-2293)**
*****SEALED*****

**MEMORANDUM OPINION**
(November 25, 2013)

Presently before the Court is Defendant Marc Edwin Applewhite's [46] Motion to Proceed *In Forma Pauperis* and [45] Motion to Vacate Sentence pursuant to 28 U.S.C. § 2255. The Defendant, who is proceeding *pro se*, alleges six grounds of error and two grounds of ineffective assistance of counsel as bases for vacating his sentence. Upon a searching review of the parties' submissions,[1] the relevant authorities, and the record as a whole, the Court finds that the Defendant is entitled to proceed in this matter *in forma pauperis*, but not entitled to the requested relief. Accordingly, the Court shall GRANT the Defendant's Motion to Proceed *In forma Pauperis* and DENIES the Defendant's Motion to Vacate Sentence.

### I.    BACKGROUND

*A. Factual Background*

The underlying facts in this case to which the Defendant agreed in a signed statement and during the plea colloquy under oath are as follows: On June 9, 2005, at approximately 11:43

---

[1] Def.'s Mot. to Vacate Sentence, ECF No. [45] (titled "Petition for Writ of Habeas Corpus"); Govt.'s Opp'n, ECF No. [57]. The Defendant filed no reply.

A.M., the Defendant entered the Bank of America located at 402 M Street, S.W., in the District of Columbia. Gov't. Ex. A (Jan. 12, 2009, Factual Proffer), at 1. The Defendant stood in the lobby, talked on a cell phone for a short period of time, eventually approached a teller window, and slid a note to the teller which stated, "Do Not Try to Alarm No One! For real! Good Morning You have less than 1 mint to fill one envelope with one hundred dollar bills or people outside and in here will be shot. Please co-operate. Thank you!" *Id*. The teller inquired as to whether the incident was "For real," and after the Defendant nodded "Yes," the teller opened his teller drawer. *Id.* The teller looked around and noticed at the adjacent teller window an individual whom the teller believed to be in law enforcement, although the individual was not wearing a uniform. *Id*. The teller then closed the drawer without giving the Defendant any money. *Id.* The teller exchanged glances with the Defendant and then the Defendant left the bank without retrieving any money. *Id*.

The Defendant's picture was retrieved from the surveillance cameras in the bank and federal agents recovered six latent fingerprints from the area around the teller window. *Id.* at 1-2. Additionally, federal agents recovered the demand note and a bank deposit slip from the teller's window. *Id*. Federal Bureau of Investigations ("FBI") lab analysts determined that one latent print garnered from the demand note and two latent prints on the deposit slip were the Defendant's fingerprints. *Id.* at 2.

The Government presented this information to a federal grand jury and, on January 30, 2008, an indictment was returned for the sole count of bank robbery in violation of 18 U.S.C. § 2113(a) against the Defendant. The Defendant was held without bond from June 13, 2008, to July 15, 2009 pending the resolution of this case.

   *B. Written Plea Agreement*

The Defendant signed a written plea agreement on January 12, 2009. *See* Gov't. Ex. B (Jan. 12, 2009, Plea Agreement). The agreement contained a "Factual Proffer" which included the Defendant's agreement that he "fully underst[ood] th[e] Factual Proffer and voluntarily agree[d] that it [wa]s accurate. No threats have been made to me . . . [n]o agreements, promises, understandings, or representations have been made with, to, or for me other than those set forth above." *See* Gov't. Ex. A (Jan. 12, 2009, Factual Proffer), at 3. The plea agreement also contained a signature page with a heading entitled "Defendant's Acceptance." The paragraphs under this heading read as follows:

> I have read all nine pages of this plea agreement and have discussed it with my attorney Carlos Vanegas, Esq. I fully understand this agreement and agree to it without reservation. I do this voluntarily and of my own free will, intending to be legally bound. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this agreement fully. I am in fact guilty of the offense identified in this Agreement.
>
> I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in this Plea Agreement. I am satisfied with the legal services provided by my attorney in connection with this plea agreement and matters related to it.

*See* Gov't. Ex. B (Jan. 12, 2009, Plea Agreement), at 10. The plea agreement also specifically advised that "[y]our client understands that the sentence in this case will be determined by the Court, pursuant to the factors set forth in 18 U.S.C., Section 3553(a)," "that the sentence to be imposed is a matter solely within the discretion of the Court," and "that the Court is not obligated to follow any recommendation of the Government at the time of sentencing . . . ." *Id.* at 2, 5.

### C. Plea Colloquy

On January 12, 2009, this Court conducted an extensive and thorough plea colloquy with the Defendant under oath. The Court went fact-by-fact through the factual proffer and the Defendant acknowledged under oath the accuracy of every aspect of the factual proffer. *See* Gov't Ex. C

3

(Jan. 12, 2009, Plea Transcript), at 13-17. After the Defendant affirmed the accuracy of the facts supporting each element of the crime, the Court found the factual proffer proved the elements of bank robbery, 18 U.S.C. §2113(a), beyond a reasonable doubt: (1) the defendant took, or attempted to take, from the person or presence of another money belonging to or in the care, custody, control, management or possession of a bank; (2) the deposits of the bank were insured by the Federal Deposit Insurance Corporation; and (3) the defendant took, or attempted to take, the money by force and violence or by intimidation. *See id.* at 17.

In addition, the Court described in detail the process for calculating the Defendant's sentence, inquiring repeatedly throughout its explanation whether the Defendant understood the explanation to which he replied that he did. *Id.* at 19-21, 23-25, 27-28, 29-30. The Court also repeatedly emphasized that it had not calculated the Defendant's sentence yet, could not do so until the pre-sentence report had been completed, and that the estimated sentence could change. *Id.* 23-25. The Court repeatedly advised the Defendant that his sentence would be within the sole discretion of the Court. *See, e.g., id.* at 29-30. Finally, the Court obtained confirmation from the Defendant that he received no promises as to what sentence the Court would impose if the Court accepted his guilty plea and that he had not been promised that he would receive a lighter sentence because of his guilty plea. *Id.* at 39. The Court asked the Defendant if he was entering the plea agreement voluntarily and of his own free will, and the Defendant responded affirmatively. *Id.* at 39-41. The Court also asked the Defendant if he was pleading guilty because he was, in fact, guilty of the charges, and the Defendant responded affirmatively. *Id.* at 41.

### D. *Sentencing*

On July 15, 2009, this Court committed the Defendant to the custody of the Bureau of

Prisons for a term of thirty-four months to run consecutively to any other sentence already being served by the Defendant followed by thirty-six months of supervised release. At the time the Defendant was sentenced, he was already serving a sentence in the Middle District of North Carolina that was projected to be completed on October 29, 2010. The Defendant was further ordered to pay a special assessment of $100. This sentence represented a significant departure from the Presentence Investigation Report recommendation, which, pursuant to statutory calculations, suggested a period of incarceration of fifty-seven (57) to seventy-one (71) months. The Court granted the downward departure pursuant to § 5K1.1 due to the Defendant's cooperation with the government.

### E. *Present Petition for a Writ of Habeas Corpus*

Beginning November 23, 2009, and ending January 22, 2010, the Defendant filed a series of post-conviction motions.[2] On February 4, 2010, this Court issued an Order explaining to the Defendant that this Court believed that the claims asserted in these motions may only be raised in a motion filed pursuant to 28 U.S.C. § 2255. 02/04/10 Order, ECF No. [43]. The Court therefore indicated that it intended to construe the Defendant's motions dated November 23 and December 4, 2009, and January 19, 21, and 22, 2010, as § 2255 motions.[3] *Id.* However, the

---

[2] These motions are: [25] *"Motion for Modification/Medigate (sic) the Sentence or Correct Crime Title Change and Lower Sentence;"* (filed Nov. 23, 2009); [28] *"Motion to Vacate, Set Aside, or Correct the Sentence pursuant to 28 U.S.C. § 2255"* (filed Dec. 2, 2009); [31] *"Recommendation of Immediate Relief Motion"* (filed Dec. 7, 2009); [32] *"Motion to Court for Defendant to Return to Federal Court to Overturn Sentence for Wrongfully Convicted Charge Immediately"* (filed Dec. 7, 2009); [39] *"Immediate Sentence Overturn to Innocense (sic), Defendant Receive Immediate Release Order Due to Evidence of U.S. Constitution Violations"* (filed Jan. 19, 2010); [40] *"Support Motion to Innocence, Error of Incorrect Indictment Which Led to Unjust Prison Conviction"* (filed Jan. 21, 2010); and [42] *Motion to District Court District of Columbia Judge, Honoruble (sic) Colleen Kollar-Kotelly to Order Sentence on Defendant Overturn to Innocence and Released Based on Evidence Presented of U.S. Citizens Violation"* (filed Jan. 22, 2010).

[3] The Court also explained that because Defendant titled his December 2, 2009, motion as a *"Motion to Vacate, Set Aside or Correct the Sentence pursuant to 28 U.S.C. § 2255,"* the Court will

Court informed the Defendant of the consequences that may result from the re-characterization of his motions, and the Court gave the Defendant an opportunity to withdraw his motions if he wished to avoid these consequences. *Id.* The Court ordered that the Defendant would have sixty days, in which to inform the Court whether he wanted to withdraw his motions or have the Court re-characterize them as § 2255 motions. *Id.*

On February 12, 2010, the Court received a motion from Defendant, dated February 1, 2010, captioned *"Petition for Writ of Habeas Corpus By a Person in Custody in the District of Columbia."* The Court let this motion be filed on March 15, 2010. Although this motion is captioned as a petition for habeas corpus, the claims asserted in this motion may only be asserted in a § 2255 motion. Accordingly, on March 15, 2010, the Court issued an Order construing this motion as a § 2255 motion. 03/15/10 Order, ECF No. [44]. In addition, because this was the most recent § 2255 motion filed by Defendant, the Court construed this motion as Defendant's only § 2255 motion unless Defendant indicated that it should be construed otherwise. *Id.* The Defendant never so indicated.

The Defendant's § 2255 motion alleges six claims of error. Specifically, (1) the date the grand jury indicted the Defendant (November 6, 2006) precedes the date on which the FBI investigator received the results of a fingerprint test linking the Defendant to the offense (August 10, 2007); (2) the arrest warrant listed June 9, 2005, as the date the robbery took place while the indictment against the Defendant listed June 25, 2005, as the offense date; (3) the complaint warrant was issued on August 13, 2007, and served to Defendant in May 2008, but both the FBI investigators and the U.S. Marshalls knew that Defendant was in custody for another crime since

---

consider it as a § 2255 motion unless informed otherwise by the Defendant.

February 15, 2007; (4) the Defendant was not Mirandized on the charge of bank robbery; (5) there were no witnesses that could identify the Defendant as the robber and the teller gave two different accounts of the robbery; and (6) the FBI investigator assigned to the case was the only one who made the assumption that Defendant committed the attempted robbery; the FBI investigator received the fingerprint test results twenty-six months after submitting the prints for testing; and the Bank of America called 911 forty-five minutes after the robbery. In addition, the Defendant alleges two grounds of ineffective assistance of counsel. Specifically, the Defendant claims that (1) defense counsel guaranteed the Defendant would receive a thirteen-month sentence of time served, thereby inducing him to accept the plea agreement; and (2) defense counsel "prohibited" the Defendant from taking his case to trial due to defense counsel's assertion that the Defendant's prior conviction for fraud and identity theft would cause a jury to think the Defendant is a liar.

The Court shall address each of the Defendant's grounds for relief in turn.

## II. LEGAL STANDARD

Under 28 U.S.C. § 2255, a prisoner in custody under sentence of a federal court may move the sentencing court to vacate, set aside, or correct its sentence if the prisoner believes that the sentence was imposed "in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "To have a plea set aside on a section 2255 petition, the petitioner 'must show that the plea proceeding was tainted by a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure.'" *United States v. Weaver,* 265 F.3d 1074, 1077 (D.C. Cir. 2001) (quoting *United*

States v. Farley, 72 F.3d 158, 162 (D.C. Cir. 1995).

The circumstances under which such a motion will be granted, however, are limited in light of the premium placed on the finality of judgments and the opportunities prisoners have to raise most of their objections during trial or on direct appeal. "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady,* 456 U.S. 152, 166, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Nonetheless, "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues, and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). However, the decision whether to hold a hearing is entrusted to the district court's discretion, particularly where, as here, the reviewing judge presided over the proceeding in which the petitioner claims to have been prejudiced. *United States v. Morrison,* 98 F.3d 619, 625 (D.C. Cir. 1996), *cert. denied,* 520 U.S. 1131 (1997). "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion[.]" Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 4(b).

## II.     DISCUSSION

### A. Six Alleged Errors

The Defendant alleges six errors relating to the indictment, the complaint warrant, the Defendant's *Miranda* rights, and the sufficiency of the evidence as grounds for relief under 28 U.S.C. § 2255. The Government argues that by entering an unconditional guilty plea, the Defendant waived his right to challenge any of these alleged errors. The Government also argues that, in any event, each of these claims is without merit. Regardless of whether the

8

Defendant waived his right to raise any of these grounds for relief, the Court finds that each allegation lacks merit and can be denied without an evidentiary hearing.

### i. Claims Regarding Indictment Error

The Defendant raises two claims of indictment-related error as grounds for relief. First, the Defendant notes that the date the grand jury was sworn in, November 6, 2006, predated the fingerprint results that linked the defendant to the offense. Def.'s Mot. at 5. As a result, the Defendant appears to argue, there was insufficient evidence to indict the Defendant. However, the Defendant conflates the date on which the grand jury was sworn in with the more important date on which the grand jury returned the indictment. The latter date represents the moment after which the grand jury has had an opportunity to hear and contemplate the evidence offered by the prosecution. Here, the Defendant's indictment was returned on January 30, 2008, five months after the fingerprint results linking the Defendant to the bank robbery became available to the grand jury. Consequently, the Defendant's allegation of indictment error is without merit.

The Defendant also alleges that the indictment incorrectly stated the offense date as June 25, 2005, instead of June 9, 2005. *Id.* However, the Defendant is again mistaken, because the indictment actually reflects an offense date of June 9, 2005. *See* Gov't. Ex. D (Jan. 30, 2008, Indictment). Accordingly, these claims of error cannot be grounds for relief pursuant to § 2255.

### ii. Claim Regarding Complaint Warrant

The Defendant's third claim of error is that the Defendant was served with the "complaint warrant" in May 2008, and the "warrant by Federal Magistrate Judge Alan Kay was issued August 13, 2007, with the reporting facts stated [sic] that the FBI investigation and U.S. Marshall of N.C. and D.C. knew [the Defendant] was already in custody on another crime since February 15, 2007." Def.'s Mot. at 5. It is unclear to the Court what the Defendant's claim of

9

error actually is. The Defendant simply recites a portion of this case's procedural history and does not explain how he was prejudiced by this sequence of events. If the Defendant is making a claim of error related to the length of time between the issuance of the arrest warrant and the date the Defendant alleges he was served with the "complaint warrant," a review of the docket reveals that the lapse in time was actually far shorter than that alleged by the Defendant. On December 26, 2007, the Court received a letter dated December 20, 2007, from the Defendant requesting court appointed counsel to which the Defendant attached a copy of the arrest warrant and complaint. Thus, the Defendant received the warrant well before May 2008. Without any claim of prejudice, the (maximum) four-month period between the issuance of the warrant and the Defendant's receipt of the warrant is not grounds for relief pursuant to § 2255. The Court further notes that the statute of limitations for bank robbery—if that is the error the Defendant is alleging—is five years and the Defendant was indicted approximately two-and-a-half years after committing the bank robbery, well within the statute of limitations. *See* 18 U.S.C. § 3282(a) ("Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed."). Accordingly, the Defendant has not alleged any error on which this Court can grant relief pursuant to § 2255.

### iii. Claim Regarding Waiver of Miranda

The Defendant's fourth claim of error is that he was "never Mirandized on this charge" and does not recall or have proof that he signed a waiver of these rights. Def.'s Mot. at 6. This general allegation by itself is insufficient grounds for the Court to grant relief. The Defendant does not specify how any statement he made was used in this case. *See Dickerson v. United States*, 530 U.S. 428, 443-44 (2000) (explaining that Miranda's "core ruling [is] that unwarned

*statements* may not be used as evidence in the prosecution's case in chief.") (emphasis added). Moreover, the only statement the Defendant provided in this case was made in the context of a debriefing about another case during which the Defendant's Plea Counsel was present. *See Miranda v. Arizona*, 384 U.S. 436, 466 (1966) (finding that presence of counsel "would be the adequate protective device necessary to make the process of police interrogation conform to the dictates of the privilege."). Accordingly, this allegation is insufficient grounds for the Court to grant relief pursuant to § 2255.

### iv. Claims Regarding Sufficiency of the Evidence

Finally, the Defendant makes two (in actuality four) allegations suggesting the evidence was insufficient to convict him. First, the Defendant contends that no witnesses could identify him from the crime scene and that the teller gave two versions of what happened. Def.'s Mot. at 8. As part of his second allegation, the Defendant contends that the "FBI investigator assign[ed] to the case was the only one who made the assumption that defendant Marc Edwin Applewhite attempted to rob the Bank of America;" the FBI investigator received the fingerprint test results twenty-six months after submitting the prints for testing; and the Bank of America called 911 forty-five minutes after the robbery and the 911 recording was not available due to "technical changes." *Id.* None of these allegations undercut the strength of the evidence to which the Defendant averred in the written plea agreement and during the plea colloquy under oath. Even if no witness could identify the Defendant from the crime scene, the Defendant was convicted on the basis of the recovered note demanding money from the teller, his fingerprints found on the note and a deposit slip, and the clear photograph of the Defendant that was captured on the bank's surveillance video—evidence that was more than sufficient for a reasonable juror to find the Defendant was the individual guilty of bank robbery. In addition, the fact that the teller

stated in one statement that he asked the robber a question and in a second statement that he said nothing, is immaterial to whether the crime was committed and whether the Defendant committed it and likewise does not undercut the strength of all of the evidence on which the Defendant was convicted. Moreover, in his plea agreement and during the plea colloquy, the Defendant repeatedly affirmed the veracity of the factual proffer and specifically affirmed the accuracy of the teller inquiring of the Defendant "For real?" *See* Gov't. Ex. C (Jan, 12, 2009, Plea Transcript), at 15.

As to the Defendant's second set of allegations, they all are immaterial to the Defendant's conviction and the Defendant alleges no prejudice as a result of any of these alleged errors. It is inapposite to the sufficiency of the evidence what the FBI investigator or other investigators thought. In addition, the fact that it took twenty-six months for the FBI investigator to obtain the fingerprint results and subsequently identify the Defendant is also inapposite as the Defendant was indicted well within the five-year statute of limitations. *See* 18 U.S.C. § 3282(a). Finally, the fact that the 911 call was made forty-five minutes after the robbery and that the 911 recording was unavailable, without any allegation of prejudice, is also inapposite. Accordingly, the Defendant's insufficient evidence claims do not constitute grounds on which the Court can grant relief pursuant to § 2255.

### B. Ineffective Assistance of Counsel Claims

Finally, the Defendant claims that his Plea Counsel was ineffective because he promised the Defendant that he would receive a sentence of time served reflecting the thirteen months he had been held pending sentencing. Def.'s Mot. at 8. The Defendant contends that he relied on this promise in making his decision to accept and sign the plea agreement. *Id.* In addition, the Defendant appears to argue that his plea was not voluntary because his attorney "would not

12

allow the defendant, Marc Edwin Applewhite, to carry this case to trial for the simple reason . . . [that] defendant just was recently convicted for fraud and identity theft and that's telling the jury, you're a liar, your past criminal record of fraud/worthless checks and defendants character and demeanor!" *Id.*

To establish a successful claim for ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner must prove both (1) "that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms," and (2) "that this error caused [him] prejudice." *United States v. Hurt,* 527 F.3d 1347, 1356 (D.C. Cir. 2008) (citing *United States v. Hughes,* 514 F.3d 15, 17 (D.C. Cir. 2008)).

The reviewing court must begin with a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment, *Cullen v. Pinholster,* ––– U.S. –––, 131 S.Ct. 1388, 1403, 179 L.Ed.2d 557 (2011), and it is the petitioner's burden to show that counsel made errors "so serious" that counsel could not be said to be functioning as the counsel guaranteed by the Sixth Amendment, *Harrington v. Richter,* ––– U.S. –––, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011). Even then, the petitioner must further establish prejudice, a showing "[t]hat requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Cullen,* 131 S.Ct. at 1403 (quoting *Richter,* 131 S.Ct. at 791). To meet this standard in the plea context, "defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "Even under *de novo* review, the standard for judging counsel's representation is a most deferential one," *Richter,* 131 S.Ct. at 788, and "[s]urmounting *Strickland's* high bar is never an easy task," *Padilla v. Kentucky,* 559 U.S. 356, 371, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010) (citations omitted).

The Defendant's claims of ineffective assistance of counsel are belied by the record. In signing the written plea agreement, the Defendant averred that "absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty" and that he entered such agreement "voluntarily and of [his] own free will." Gov't. Ex. B (Jan. 12, 2009, Plea Agreement), at 10. Likewise, in signing the accompanying factual proffer, the Defendant declared that he "fully underst[ood] th[e] Factual Proffer and voluntarily agree[d] that it [was] accurate" and that "no threats, agreements, promises, understandings, or representations had been made to him." Gov't. Ex. A (Jan. 12, 2009, Factual Proffer), at 3. Importantly, the plea agreement advised that "[y]our client understands that the sentence in this case will be determined by the Court, pursuant to the factors set forth in 18 U.S.C., Section 3553(a)," "that the sentence to be imposed is a matter solely within the discretion of the Court," and "that the Court is not obligated to follow any recommendation of the Government at the time of sentencing . . . ." *Id.* at 2, 5. Thus, the plea agreement itself contained repeated reminders that the Defendant was not "guaranteed" any specific sentence and repeated signed acknowledgments by the Defendant that he understood that to be true and was not pleading guilty on the basis of any promises or representations.

Moreover, throughout the plea colloquy, the Defendant affirmed under oath his understanding that he was promised no specific sentence and that he was entering his plea voluntarily and not by force. At the very beginning of the plea colloquy the Court clearly stated that it wanted to make sure "that we go through [the plea colloquy] slowly and carefully, that you understand exactly what you're doing . . . [that] this is really what you want to do," and informed the Defendant that "we need to put on the record, either in writing or orally here in court, all of the terms of the agreement . . . so that there isn't any misunderstanding and you can't come back

14

again in a week or so and say I thought this or that was part of the agreement." *See* Gov't Ex. C (Jan. 12, 2009, Plea Transcript), at 4. With that in mind, the Defendant was then repeatedly informed that it was in the Court's *sole* discretion to determine the sentence, that the Court would not be bound by any agreed upon sentence or the Government's sentencing recommendation, and that the Court had not yet calculated the sentence. *See id.* at 23-25, 29-30, 37-38. Indeed, at least six different times, the Court advised the Defendant that his sentence would be determined in accordance with 18 U.S.C. § 3553(a). The Court also explained in great detail how the Defendant's sentence would be calculated under the sentencing guidelines, *see id.* at 19-21, and walked the Defendant through the preliminary guideline calculation while making clear that "the calculation may turn out to be different than what is set out here." *Id.* at 23-25. Throughout these explanations the Court repeatedly asked the Defendant whether he understood and the Defendant responded affirmatively.

In addition, the Defendant confirmed—under oath—that he had not received any promises from anyone as to what his sentence would be:

> THE COURT: All right. A few questions on voluntariness. Has anyone, including your attorney, the prosecutor or anybody else in law enforcement that you've come in contact with since your arrest promised or suggested to you that just by pleading guilty that you would necessarily get a lighter sentence?
>
> THE DEFENDANT: No, ma'am.
>
> THE COURT: In other words, acceptance of responsibility would be considered, but that pleading guilty entitles you to an automatic lighter sentence. Do you want to talk to your lawyer about this?
>
> THE DEFENDANT: No, ma'am, no one promised- -
>
> THE COURT: Okay. Has anyone forced, threatened or coerced you in any way into entering this plea of guilty?
>
> THE DEFENDANT: No, ma'am.

> . . . .
>
> THE COURT: Has anyone made any promises to you as to what sentence I'll impose if I accept you guilty plea?
>
> THE DEFENDANT: No, ma'am.
>
> THE COURT: Do you understand that at this time I don't know what sentence I'll impose in your case since I haven't heard from the lawyers or the probation office?
>
> THE DEFENDANT: Yes, ma'am

*Id.* at 39-41. The Defendant also affirmed under oath that he was entering his plea voluntarily and of "[his] own free will" and because he was guilty. *Id.* at 41. The Defendant further confirmed that he understood that if "the sentence is more severe than [he] expect[ed] [he'll] still be bound by the plea and ha[s] no right to withdraw it." *Id.* at 39.

Finally, at no point in the six months between the Defendant's plea and sentencing hearing during which the Court held one status hearing did the Defendant indicate that he wanted to withdraw his plea. Likewise, at the sentencing hearing the Defendant said nothing about his present claims even though he took the opportunity to address the Court.

Now, the Defendant presents only bare allegations that his plea was not voluntary, allegations that he did not swear under the penalty of perjury are true and correct. As a defendant's statements in open court carry a strong presumption of verity, *see United States v. Robinson*, 498 F. Supp. 2d 328, 336 (D.D.C. 2007) (citing *Blackledge v. Allison*, 431 U.S. 63, 75 (1977)), the Court cannot find that the Defendant was induced to forego trial and plead guilty by any promises or coercion on the part of Plea Counsel. *See United States v. Horne*, 987 F.2d 833, 736 (D.C. Cir. 1993) ("it is clear enough that a defendant must make more than a bare allegation that he 'would have pleaded differently and gone to trial.'" (quoting *Key v. United States*, 806 F.2d 133, 139 (7th Cir. 1986))). Moreover, in light of the strong evidence against the

16

Defendant—surveillance video images, the Defendant's fingerprints on a demand note and a deposit note, and the teller's statements corroborating this evidence—the Court cannot find that there was a "reasonable probability" that, but for counsel's errors, the Defendant would have insisted on going to trial. *See United States v. Hanson*, 339 F.3d 983, 991 (D.C. Cir. 2003) (A defendant "does not need to show that he would have prevailed at trial, only that there is a reasonable probability that he would have gone to trial . . . any rational decision regarding the latter would have required a realistic assessment of the former." (quoting *United States v. McCoy*, 215 F.3d 102, 108 (D.C. Cir. 2000))). Thus, the Defendant has failed to establish under *Strickland* that he was prejudiced by any alleged deficiencies of his Plea Counsel. Accordingly, the Court denies the Defendant's ineffective assistance of counsel claims without an evidentiary hearing.

## IV. CONCLUSION

For all of the foregoing reasons, the Court shall GRANT the Defendant's [46] Motion to Proceed *In Forma Pauperis* and DENY the Defendant's [45] Motion to Vacate Sentence. Furthermore, no Certificate of Appealability shall issue from this Court. To the extent the Defendant intends to file an appeal, he must seek a Certificate of Appealability from the United States Court of Appeals for the District of Columbia Circuit in accordance with Federal Rule of Appellate Procedure 22.

An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

*/s/*
_____
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE
